CHECKER CAB & BAGGAGE CO. et al. v. CRONE.

No. 10596.

Court of Civil Appeals of Texas. Galveston.

March 24, 1938.

On Motions for Rehearing May 5, 1938.

Battaile, Burr & Holliday, of Houston, for plaintiffs in error.

Harry W. Freeman, of Houston, for defendant in error.

GRAVES, Justice.

This statement, thought to be correct, is a combination of those appearing in the briefs of the several parties hereto:

Plaintiff, George Crone, brought this action against Checker Cab & Baggage Company, operating taxi-cabs in the City of Houston, and The Southern Underwriters, surety on the taxi-cab bond, for damages alleged to have been suffered by him as the direct and proximate result of the violation of Section 1287, subdivision (d), of a city-ordinance of 1922, prohibiting vehicles from approaching nearer than 10 feet to street-cars under certain conditions, by the driver of one of the taxi-cabs owned and operated by that company, which violation was pleaded as negligence per se.

Among the extended provisions of the bond so executed by both defendants, those deemed directly material to the controversy here were in his verbis these:

"Now, therefore, if the said Checker Cab and Baggage Company of Harris County, Texas, shall pay all final judgments which may be rendered against (it, him or them), it for damages on account of death or injuries to property or person, including both passengers and the public, occasioned by the operation of the above described taxicab, then this obligation shall be null and void, otherwise it shall remain in full force and effect."

"This bond, while made payable to the Mayor of the City of Houston, and his successors in office, shall be considered to be for the use and benefit of any person or persons entitled thereto by reason of any injury sustained through the operation of such vehicles as hereinabove set forth, and may be sued upon by such person or persons, or their legal representatives, directly without joining the Mayor of the City of Houston. This obligation is performable in Harris County, Texas, and any and all suits which may be instituted and prosecuted to final judgment against either the principal or the surety hereon, or both, in any court in Harris County, Texas, which would, in the absence of any statute fixing the venue of such suit, have jurisdiction of the same, and all parties hereto, both principal and surety, waive the right, if any they have, to have said suit or suits instituted and prosecuted in any county than said Harris County, Texas."

After the overruling of a plea in abatement by the surety company, setting up a misjoinder of parties and causes of action, as well as the general demurrers of both defendants, the cause was submitted to a jury on nine special issues, inquiring in general substance whether the taxi-cab driver had approached nearer than 10 feet to the street-car in question, and if so, whether that action constituted willful negligence and a proximate cause of the accident involved; also whether the plaintiff at the time had been standing in front of that street-car, and if so, whether that action on his part had constituted negligence and a proximate cause of the accident; further, whether Crone had failed at the time to keep a proper lookout for automobiles going west on Texas Avenue, and if he had, whether that failure was a proximate cause of the accident; and, finally, what sum of money would adequately compensate him for the injuries he had sustained.

On the coming in of a verdict on such issues favorable to the plaintiff, the trial court entered judgment thereon—as well as upon what it found to be the undisputed evidence otherwise—in favor of the plaintiff and against both defendants for $523.00;

From that result below this appeal by both defendants, through writ of error, proceeds.

The surety company insists in this court, first, that its plea in abatement of the suit as against it was good and should have been sustained, in that the plain provisions of the quoted surety-bond, under which alone it was sued and held liable, only bound it to pay all such final judgments (within the bond's limits) as might be rendered against the Cab Company for damages occasioned by the operation of the taxi-cab covered thereby, and not primarily to pay such damages in advance of their having been reduced to such final judgment; that since no such final judgment has been rendered against the Cab Company, this suit being one merely for damages, with the objective of ultimately thereafter obtaining such a final judgment, no cause of action therein lay against it, the surety company; these authorities being cited and relied upon in support of that contention: Grasso v. Cannon Ball Motor Freight Lines, 125 Tex. 154, 81 S.W.2d 482; Bransford v. Pageway Coaches, Tex.Com.App., 104 S.W.2d 471; Bluth v. Neeson, 127 Tex. 462, 94 S.W.2d 407.

■■ This court is unable to see any substantive difference between the positions

of the surety company under the statute involved in the Grasso Case, supra (section 13 of Vernon's Ann.Civ.St. Article 911b), and of the surety under the taxicab bond in question here; the first-quoted provision of this bond, by its express words and all fair implications to be drawn therefrom, "makes the basis of a suit by an injured party against the surety on the bond a 'judgment' against the operator of the taxicab, and no authority for a suit against such surety is authorized, or has any basis whatever, unless there is a judgment. Under the very terms of the bond, a suit filed against the surety by an injured party before there is a judgment against the taxicab-operator is a suit without basis in law; as to the surety, therefore, plaintiff's position would not only constitute a misjoinder, where the surety and the taxicab-operator are prematurely joined in the same suit, but the suit as against the surety would be subject to a general demurrer, because no cause of action can be alleged against it, except on a final judgment."

■ Not only so, but it seems equally plain that neither of the further recitations, to the effect that it may be sued upon without making the mayor of Houston a party, and that the obligation of it is performable in Harris County, in anywise changes the undertaking of the surety company thereunder: the first of these merely permitting any person who has recovered a final judgment against the taxicab company for injuries occasioned through its operation to enforce such obligation without procuring the bringing of a suit for his benefit by the mayor; the second simply laying the venue for the enforcement of such obligation, and abrogating the statutory-rule otherwise requiring the principal to be sued in connection with the surety. Consequently the Grasso Case, together with those cited with it, would seem determinative of that phase of this controversy also.

The defendant-in-error, in combatting this conclusion, and contending that the last-quoted provisions in this bond do fasten a direct and primary obligation on the surety company to pay damages for such injuries as were occasioned in this instance, cites and relies upon these authorities: Commercial Standard Ins. Co. v. Shudde, Tex.Civ.App., 76 S.W.2d 561; Commercial Standard Ins. Co. v. Philpot, Tex.Civ.App., 82 S.W.2d 681; Scroggs v. Morgan, Tex.Civ.App., 107 S.W.2d 911.

These holdings, however, were all by Courts of Civil Appeals, and the leading one of them, the Shudde Case, as appears from the court's opinion, was grounded upon a contract of insurance and a city-ordinance, of which the court says (page 564):

"By its specific terms such policy of insurance shall 'give a right of action against such company as indemnitors in favor of the person or persons so injured.' Such policy is referred to throughout as 'liability insurance.' The terms of the ordinance will be read into the insurer's contract. * * * The above ordinance having pointedly authorized a direct action against the insurer by the injured party, the trial court correctly overruled appellant's plea in abatement."

The other two holdings so cited by him are on a parity as to factual-basis, hence all three of them appear to be clearly distinguishable from the situation here presented.

■ It is true that the last-quoted provision of this bond does expressly authorize suit against both the insured and the insurer, but only by one in position to so join them—that is, after a final judgment has been obtained against the insured.

■ Wherefore, it is concluded that the learned trial court erred in not sustaining the surety-company's plea in abatement, on the ground that this suit as to it was prematurely brought.

■■ The further contention of both plaintiffs-in-error, the ultimate gist of which is, that there was neither essential pleading nor proof by the defendant-in-error of there being no properly designated safety-zone where the street-car was stopped, is overruled as being without merit; the burden of both alleging and showing what the fact was about that matter—it having arisen, if at all, from a mere exception or proviso in the ordinance upon which the defendant-in-error grounded his cause of action, hence constituting a special defense thereto—was laid upon the plaintiffs-in-error themselves; they neither raised it by special exception, nor in any other way, hence are in no position to complain of their own omission upon the appeal; 49 C.J., p. 153; 21 R.C.L., § 29, p. 463; Lane v. Bell, 53 Tex.Civ.App. 213, 115 S.W. 918; Spence v. Fenchler, 107 Tex. 443, 180 S.W. 597; Quannah A. & P. R. R. Co. v. Bone, Tex.Civ.App., 199 S.W. 332; Baker v. State, 132 Tex.Cr.R. 527, 106 S.W.2d 308; 39 Texas Jur., p. 194.

It follows from these conclusions that, as against the surety-company, The Southern Underwriters, the judgment should be reversed and the cause dismissed as having been so prematurely brought, without prejudice, however, to the defendant-in-error's continuing right to bring it in upon the happening of the contingency recited in the bond as conferring such privilege; but that, as affects the principal in the bond, the Checker Cab & Baggage Company, it not reasonably appearing that an improper judgment was rendered against it because of the premature joining of the surety-company with it, and there being in other respects no prejudicial error as affects such judgment against it, the same will be affirmed; it will be so ordered, with Justice CODY doubtful as to the soundness of the affirmance-portion of this judgment.

Judgment reversed and cause dismissed as against The Southern Underwriters, but affirmed as to the Checker Cab & Baggage Company.

PLEASANTS, C. J., absent.

## On Motions for Rehearing.

GRAVES, Justice.

Both sides have filed motions for rehearing, the Cab Company and the Underwriters, on the one hand, urging only the setting-aside of the affirmance-portion of our former judgment and in lieu thereof that the cause be remanded for a new trial against the Cab Company, while Crone, on the other hand, insists that such judgment of this court be now vacated entirely and that of the court below be in all things affirmed.

After careful consideration of the questions involved, it is determined that the position of plaintiffs-in-error should be upheld and that of the defendant-in-error overruled, which accordingly will be done, mainly upon these considerations:

(1) As our original opinion discloses, the plaintiffs-in-error rely on the construction put upon essentially the same structural provision as that appearing in this surety-bond—obligating the Cab Company to pay all final judgments which may be rendered against it for damages, etc.,—by the Supreme Court in the Grasso Case, 125 Tex. 154, 81 S.W.2d 482; while, in turn, the defendant-in-error maintains that, on account of the further provision therein—in effect, that "all suits which may be instituted thereon may be instituted and prosecuted to final judgment against either the principal or the surety, or both"—the construction of this bond as a whole is ruled by the principle applied by the Amarillo court—with the Supreme Court's approval in its refusal of a writ of error—in Commercial Standard Company v. Shudde, Tex.Civ.App., 76 S.W. 2d 561.

(2) As this court understands it, there is no analogy between the respective holdings in the Grasso and Shudde Cases, but, on the contrary, they run along parallel lines severally construing materially differing respective provisions by state-statute, city-ordinance, and private contract; in other words, the Amarillo court simply held that the city-ordinance in that instance—contrary to the legal effect of the insurance policy itself— imposed primary liability upon the Insurance Company, notwithstanding provisions in its policy directly to the contrary, and that that situation alone distinguished that cause from the line of cases the Grasso Case, supra, falls among, that is Ray v. Moxon, Tex.Civ.App., 56 S.W.2d 469, Kuntz v. Spence, Tex.Com.App., 67 S.W.2d 254, and others.

█ In the suit at bar there is before us for construction only the surety-bond, quoted in the original opinion; no city-ordinance, so far as the record discloses, was ever pled or proven, hence this court does not know that one even existed; 16 Texas Digest, Evidence, █ and cited cases.

So that, with nothing but the bond in this instance to construe, the question goes back to one of what effect our courts have given just such a contract between the parties as the quoted provision constitutes; as before held, it is still thought that construction has been definitely settled by the Grasso Case, supra, and those in line with it; indeed, in the very recent case of Seaton v. Pickens, 126 Tex. 271, 87 S.W.2d 709, 106 A.L.R. 512, the Supreme Court expressly so determines on a state of facts not deemed by this court to be different in legal effect from those here present; there the main obligation of the Insurance Company was (page 710) "in event a final judgment be rendered against the assured, to pay the same to an amount not exceeding the limits specified herein", which is substantially the same as the one in this bond; the same construction is there given that provision when appearing in the policy of insurance there involved as was given it when appearing in the statute reviewed in the Grasso

508

Case, and it was further determined that, whether so appearing in a private contract or a statute, it did not impose any primary liability upon the insurer or surety, but specifically limited their liability to the payment of a final judgment that might thereafter be rendered against the assured in the policy, or the principal in the bond, thereby making the rendition of a final judgment the basis of a suit against them by the injured person, and forbidding their joinder in advance of that happening.

Wherefore, under these conclusions, it follows that our original judgment of dismissal against the Underwriters was correct and should be adhered to, but, as indicated, a reversal and remanding against the Cab Company for a new trial against it alone should be had, under these authorities: Bransford v. Pageway Coaches, Tex.Com. App., 104 S.W.2d 471; Texas Co. v. Betterton, 126 Tex. 359, 88 S.W.2d 1039; Texas Power & Light Co. v. Stone, Tex.Civ.App., 84 S.W.2d 738; Page v. Thomas, 71 S.W.2d 234.

It will be so ordered.

Motion of defendant-in-error refused, motion of plaintiffs-in-error granted, judgment of affirmance against the Cab Company set aside, and the cause remanded for a new trial as against it alone.

PLEASANTS, C. J., absent.